IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STANLEY EDELSTEIN, IVAN GERARD, PAT HOY, BARRY BLUE, ROBERT CAMPNEY, GROVONDA COLEMAN, WAYNE COREY, PETER DANIELSON, WILLIAM GOLDMAN, DANA HAMIK, MICHAEL HICKS, BILL KELLER, RICHARD NEVINS, JOE SCHUETTE, CHRISTL UPCHURCH, LORRAINE VASHON, TIM WHITTINGHILL, and PACESETTER CORPORATION AMENDED AND RESTATED KEY EXECUTIVE RETIREMENT PLAN, and ROBERT SCHMIDT, <br><br>Plaintiffs, <br><br>v. <br><br>OPTIMUS CORPORATION, <br><br>Defendant. | 8:10CV61 <br><br>**ORDER OF ATTACHMENT** |

This matter is before the court following a hearing held October 4, 2011, regarding attachment of art assets owned by the defendant in this case. See Filing Nos. 117 and 119 (text minute entries). Plaintiffs filed a motion for immediate limited order of attachment. Filing Nos. 100 and 105. The court previously found that the plaintiffs made a preliminary showing that the defendant concealed the current ownership and value of its artwork and is likely to convert its assets into money in order to place those assets out of the plaintiffs' reach. The court granted a temporary restraining order (Filing No. 108), restraining the defendant from selling, transferring, converting, donating, or otherwise disposing of the artwork owned by defendant and specifically identified in Exhibits D and E to the Affidavit of Michael L. Schleich in Support of Plaintiffs' Motion for Partial Summary

Judgment, filed June 15, 2011, Filing No. 77, as Fine Art and 20th Century Decorative Art and Designs (Filing No. 79, Ex. D (Doc # 79-5, Page ID # 637-38) & Ex. E (Doc # 79-6, Page ID # 644-97)). The court further ordered the defendant to maintain possession of the artwork and to maintain any insurance currently covering the artwork. Defendant moved this court to dissolve the temporary restraining order. Filing No. 113. The court conducted a brief hearing on September 30, 2011, and then continued the hearing to October 4, 2011, so that the parties could produce evidence in support of their respective positions. The parties agreed at the September 30, 2011, hearing to dissolve the temporary restraining order, and the defendant agreed it would not sell, convey or otherwise dispose of any of the artwork until such time as the court made a final ruling on the motion for attachment. Consequently, the court lifted the temporary restraining order.

Plaintiffs filed suit against their former employer, Optimus Corporation (f/k/a The Pacesetter Corporation, hereinafter referred to as "Optimus") alleging violations of the Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. § 1001 *et seq*. In general, plaintiffs contend Optimus denied them benefits under the Plan. Count I alleges that Optimus used unreasonable actuarial assumptions to determine lump sum values of the retirement benefits which decreased their value; Count II asserts that plaintiffs are entitled to the correct amount of lump sum payments; Count III alleges that plaintiffs are entitled to retirement benefits denied to them under the Plan; and Count IV requests injunctive and equitable relief. Filing No. 43, Amended Complaint.

The defendant implemented the Plan in November 1981. The Plan required 15 years of service before a participant would be 100% vested. In a letter dated December 16, 2008, defendant advised the participants that the Plan was terminated and that

participants would receive a lump benefit in December 2009.  Filing No. 102-3, ID 1125, Ex. A.  Thereafter, plaintiffs received a calculation of their benefits.  However, on February 2009, plaintiffs received a letter advising them that the calculations were incorrect.  In August 2009, plaintiffs received a letter from Phil Schrager, Board Chair, stating that defendant did not have the ability to pay the retirement benefits.  Defendant gave plaintiffs two options:  (1) receive an unsecured promissory note with no guarantee of payment and pay taxes immediately on the full amount; or (2) receive 50% of the total benefit, forfeit the rest, and only pay taxes on the amount received.  If plaintiffs did not elect, they would receive Option 1.  Filing No. 102-2, at ID 1123, paragraph a.  The letter said nothing about a right to appeal or an appeal process, and defendant gave plaintiffs two weeks to make the decision.  Filing No. 18, Exs. A-C.

Defendant filed a motion to dismiss.  Filing No. 14.  On September 8, 2010, this court issued an order denying defendant's motion to dismiss on the basis that plaintiffs did not have to follow the administrative exhaustion requirements, as they would be meaningless in this case.  Filing No. 28.  On September 6, 2011, plaintiffs moved to attach defendant's artwork.  Filling No. 100 and Filing No. 105.  As noted above, on September 20, 2011, this court  issued a temporary restraining order with respect to the same.  Filing No. 108.

The plaintiffs allege there is still approximately $3.2 million due and owing to them.  Although the plaintiffs at one time were primarily key executives, there is no evidence that they had any knowledge at the time of their departure regarding the full value of the artwork at issue in this case.  The testimony received at the hearing indicated that it was the defendant's intent for many years that the artwork be donated to charity.  However, the

defendant is now winding down business and intends, according to plaintiffs, to sell off assets and not contribute the money to the ERISA recipients. Instead, argue the plaintiffs, the defendant intends to give the money to the stockholder/owners, Harley Schrager and the Estate of Phillip Schrager. Defendant agrees that there will be no more income after the loan portfolio is sold.

Defendant asks this court to deny the motion for attachment, arguing that plaintiffs have failed to demonstrate facts supporting reasonable cause to attach in accordance with the Neb. Rev. Stat. § 25-1001, prejudgment statute. The defendant principally argues that the plaintiffs chose to take 50% of the Plan benefits and signed releases discharging Optimus "from any and all claims." The defendant also contends that this art collection is substantially intact and has not been sold, transferred or donated to any third party. The defendant contends that the art is an asset of the corporation and may be disposed of as the Board sees fit. Finally, the defendant asserts that it has set aside an appropriate reserve for this claim, that it is litigating this matter responsibly, and interference by this court into its internal financial affairs is unwarranted.

This court can apply state law remedies to seize the property of a party. Fed. R. Civ. P. 64. *See, e.g., Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir. 1996) (applying Missouri law). An order of attachment cannot be granted unless the plaintiffs prove, by a "preponderance of the evidence" one or more of the grounds set forth in Neb. Rev. Stat. § 25-1001; *MeccaTech, Inc. v. Kiser,* 2008 WL 1774992 (D. Neb. 2008); *Andrews v. Schram,* 562 N.W.2d 50, 53, 55-56 (Neb. 1997). Under Nebraska law, a prejudgment attachment against the property of a defendant may be issued when the defendant:

4

(1) has absconded with the intent to defraud his or her creditors;

(2) has left the county of his or her residence to avoid the service of the summons;

(3) so conceals himself or herself that a summons cannot be served upon him or her;

(4) is about to remove his or her property, or a part thereof, out of the county in which the property is located, with the intent to defraud his or her creditors;

(5) is about to convert his or her property, or a part thereof, into money, for the purpose of placing it beyond the reach of his or her creditors;

(6) has property, or rights, in action, which he or she conceals;

(7) has assigned, removed or disposed of, or is about to dispose of his or her property, or a part thereof, with the intent to defraud his or her creditors; or

(8) fraudulently contracted the debt or incurred the obligation for which suit is about to be or has been brought.

Neb. Rev. Stat. § 25-1001.

For purposes of this hearing, the court finds as follows. First, the court agrees with the defendant that it need not decide the ultimate issues in this case to make a decision with regard to attachment. However, those issues will be considered as they relate to the motion for attachment. Given those parameters, the court finds that the letter sent by defendant to plaintiffs, Ex. 3, set forth artificial deadlines that caused plaintiffs to sign the letter under duress. The court further finds sufficient evidence has been submitted that defendant has concealed the value of the artwork from the plaintiffs in violation of Neb. Rev. Stat. § 25-1001 (6).

The court bases this finding on the facts received at the hearing. First, this is a closely held corporation. It was originally owned by two brothers, Phillip and Harley Schrager. Phillip Schrager died and now the estate owns his portion of the corporation.

5

The testimony of Donald D. Kluthe, CFO, showed that as far back as 2004 the artwork was listed on the financial statements. However, the value listed apparently never exceeded book value of $2,000,000. In reality, the artwork is reasonably valued at $28,000,000. Filing No. 102, Ex. 7, Christie's appraisal. In the last year or so, the $28,000,000 appraisal for the art collection was given in connection with Phil Schrager's estate. Filing No. 120, Ex. 7; Filing No. 102-7, Christie's appraisal. Further, never has the art been listed based on the value of its individual pieces. For purposes of this hearing, it is clear that defendant tried to conceal assets, and particularly the value of the assets, from the plaintiffs. Throughout this litigation, defendant has not offered evidence concerning the value of the artwork. It was only when the plaintiffs discovered that an appraisal, referred to as the Lutz appraisal, had been done for Phillip Schrager's estate, and plaintiffs asked for a copy of that appraisal, did it come to light that the art was valued at $28,000,000.[1] Further, the defendant did in fact sell a piece of art on May 11, 2010, for $356,000.

The artificial deadline imposed on the plaintiffs by the defendant in that December 16, 2008, letter, effectively concealed the value of the artwork, and clearly misled the plaintiffs as to the value of all the assets owned by the defendant. The defendant-imposed IRS reporting deadline did not allow the plaintiffs time to obtain or examine financial statements and to investigate the defendant's assertion of insolvency for themselves. Even if they had attempted a financial examination, they would not have had enough time or information to determine the value of the artwork and to refuse to sign the agreements. According to the testimony of Mr. Kluthe, he did not send any financial information to the

---

[1] The court understands that the art will sell at a price that a willing buyer agrees to pay. That price could be more or less than the $28,000,000.

plaintiffs and he is not aware that anyone else did so either. For purposes of this motion, plaintiffs have shown by a preponderance of evidence that defendant is trying to conceal the art assets. This is sufficient evidence of concealment to meet the requirements of Neb. Rev. Stat. § 25-1001(6).

Plaintiffs also ask this court to find the attachment is valid under Neb. Rev. Stat. § 25-1001(8) dealing with fraud. Plaintiffs contend, for purposes of this attachment motion, that fraud occurred when the defendant sent a letter to plaintiffs indicating they had no money to pay the ERISA benefits and advising plaintiffs that they must choose one of two options within two weeks of the letter. Plaintiffs found out much later that such representation is in fact false, because there is an asset owned free and clear by the corporation, the artwork, that is itself more than sufficient to fulfill the alleged pension shortfall. Although the court notes that plaintiffs have not pled fraud in this case, for purposes of this motion for attachment, there is sufficient evidence to find that the defendant intended to defraud plaintiffs, by omission and misrepresentations, so as to meet the requirements of Neb. Rev. Stat. § 25-1001(8).

Defendant has asked the court to permit them to continue to sell one piece of art with a value of approximately $250,000. Defendant is interested in "testing the market" and propose to use this one piece of art to do so. The court will allow defendant to continue the process of selling this one piece of art. Any further sales of the remaining art in question will be allowed only by further order of this court. The court orders that defendant otherwise keep the art collection intact in the locations where they are currently displayed.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. The motions for attachment, Filing Nos. 100 and 105, are granted. Defendant is hereby enjoined from selling, transferring, converting, donating, or otherwise disposing

of the artwork owned by defendant and specifically identified in Exhibits D and E to the Affidavit of Michael L. Schleich in Support of Plaintiffs' Motion for Partial Summary Judgment, filed June 15, 2011, as Fine Art and 20th Century Decorative Art and Designs (Filing No. 79, Ex. D (Doc # 79-5, Page ID # 637-38) & Ex. E (Doc # 79-6, Page ID # 644-97)).

2. Defendant is further ordered to maintain possession of the artwork and to maintain any insurance currently covering the artwork. The court orders that defendant keep the art intact in the locations where they are currently displayed.

3. Plaintiffs shall post a bond in the amount of $500.00 within 24 hours of the entry of this Memorandum and Order.

4. During the hearing, defendant indicated it is attempting to sell one piece of art to test the market. Such art is valued at $250,000.00. The court will permit the defendant to continue to sell that one piece of art as set forth herein.

5. The court is requesting that the magistrate judge expedite this case, in view of the fact that the court has issued an order attaching the artwork.

DATED this 13th day of October, 2011.

BY THE COURT:

s/Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.