IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STANLEY EDELSTEIN, IVAN GERARD, PAT HOY, BARRY BLUE, ROBERT CAMPNEY, GROVONDA COLEMAN, WAYNE COREY, PETER DANIELSON, WILLIAM GOLDMAN, DANA HAMIK, MICHAEL HICKS, BILL KELLER, RICHARD NEVINS, JOE SCHUETTE, CHRISTL UPCHURCH, LORRAINE VASHON, TIM WHITTINGHILL, and PACESETTER CORPORATION AMENDED AND RESTATED KEY EXECUTIVE RETIREMENT PLAN, and ROBERT SCHMIDT, | 8:10CV61 |
| Plaintiffs, | **MEMORANDUM AND ORDER** |
| v. | |
| OPTIMUS CORPORATION, | |
| Defendant. | |

This matter is before the court on the plaintiffs' motion for partial summary judgment, Filing No. 77, and on defendant Optimus Corporation's motion for relief under Fed. R. Civ. P. 56(d), Filing No. 85.[1]

This is an action brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*., to recover retirement benefits the plaintiffs allege they are entitled to under the terms of The Pacesetter Corporation Amended and Restated Key Executive Retirement Plan (the "Plan" or "KERP Plan"). The individual plaintiffs are former

---

[1]Fed. R. Civ. P. 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order. Fed. R. Civ. P. 56(d). The defendant asks the court to deny the motion or defer consideration pending additional discovery.

employees, or surviving spouses, of Optimus Corporation ("Optimus"), formerly known as The Pacesetter Corporation ("Pacesetter").  The individual plaintiffs bring this action on behalf of themselves individually, and they also seek relief on behalf of the Plan under 29 U.S.C. §§ 1132(d)(1).

In its answer, Optimus contends that the plaintiffs' claims are barred by reason of settlement agreements and releases executed by the plaintiffs.  The plaintiffs move for partial summary judgment on the issue of the enforceability of the releases.  They contend that the releases are unenforceable because the undisputed evidence shows that they executed the releases under duress as a result of coercive acts and fraudulent misrepresentations and/or omissions.

As a threshold matter, the court finds the defendant's motion for relief under Fed. R. Civ. P. 56(d) should be denied.  The defendants have had an ample opportunity to present evidence in opposition to the plaintiffs' contentions.  Because the resolution of the matter is a question of law based on undisputed facts, further testimony or evidence would be of no consequence.

**FACTS**

The following undisputed facts are gleaned from the parties' respective statements of undisputed fact and the evidence before the court.  *See* Filing No. 78, Plaintiffs Brief in support of Motion for Partial Summary Judgment at 2-8; Filing No. 89, Defendant's Brief in Opposition at 2-5, 7-13; Filing No. 95, Plaintiffs' Reply Brief at 3-8; Filing Nos. 79, 88, 96, Indices of Evidence.  The parties agree that Pacesetter was engaged in the business of providing financing to qualified customers for home improvement loans.  Prior to April 2004, the company also manufactured and sold home improvement products and services.

Sixteen of the plaintiffs are former employees of Pacesetter and two of the plaintiffs are pursuing claims as beneficiaries under the KERP Plan on behalf of their deceased spouses who were also employed by Pacesetter.   Optimus Corporation was owned by Phil Schrager, who passed away on June 7, 2010, and who owned approximately 93.5% of the company, and Harley Schrager, who owns approximately 6.43% of the company.

In March 2004, Pacesetter sold its sales and manufacturing divisions to a third-party entity known as The Pacesetter Corporation of America ("the acquiring corporation"). Plaintiffs had already left employment at Pacesetter prior to the sale.  Most of the plaintiffs went to work for the acquiring corporation in April 2004.

After the sale in March 2004, The Pacesetter Corporation changed its name to Optimus Corporation.  Optimus retained the liability to pay benefits under the KERP Plan. The KERP Plan was an "unfunded" deferred compensation plan maintained by the company to provide deferred compensation to a select group of management and highly-compensated employees of the company at the level of vice president or higher. The employees were considered "key executives" of the corporation eligible to participate in the KERP Plan.

Optimus terminated the Plan effective December 1, 2008.  In a letter dated December 16, 2008, defendant advised the individual plaintiffs that it had terminated the Plan and calculated the lump sum payout due to each individual plaintiff.  *See* Filing No. 79, Index of Evid., Ex. A.  In a letter dated February 12, 2009, defendant advised the individual plaintiffs that it had recalculated the present value of each individual plaintiffs' retirement benefits.  See *id.*, Ex B.  Defendant did not advise the plaintiffs in either letter that it had any concerns about its ability to timely pay the benefits as calculated.  As of

August 2009, the defendant calculated the total amount of retirement benefits due to all

Plan participants to be over $6.4 million.

On or about August 21, 2009, a letter was sent by Phil Schrager to Plan participants

advising them of the company's financial circumstances.[2]  *Id.*, Ex. C., August 2009 Letter.

Phil Schrager informed the participants that:

> [W]e intended to fulfill our obligation to you by borrowing funds from our
> banking sources. Unfortunately, the Company's financial condition has been
> drastically affected by the global crisis of the last few years, as well as the
> current recession, and we find ourselves without sufficient funds or the ability
> to borrow the money needed to pay you.

*Id.* at 1.  Schrager also wrote, "[a]fter struggling with the Company's financial situation, it

became apparent that there are only two ways we can resolve payment of benefits to you."

*Id.*  He presented two options to Plan participants to resolve their claims for vested benefits

under the KERP Plan: (1) they could elect to receive 100% of the benefits by deferring

payment until 2017 in exchange for a promissory note payable at the rate of 3.3% per

annum; or (2) they could accept 50% of the vested benefits which would be funded under

a personal loan provided by Phil Schrager.  With respect to the first option, Schrager

cautioned the plaintiffs that:

> due to the fragile condition of our loan portfolio, the uncertain economy, and
> the inability of Amerifirst to borrow more money, I feel obligated to tell you,
> however, that there is no guarantee that the Company will survive this ordeal
> and be able to pay you in seven years.

*Id.*  He also advised that, under the first option, the plaintiffs "would be responsible for

paying federal and state income taxes on the total amount you were to have received on

---

[2]Enclosed with the letter was a document entitled "Pacesetter Corporation Key Executive Retirement Plan Talking Points, August 19, 2009" (the "Talking Points Memorandum") and two separate documents, each entitled "Settlement Agreement and Release" (the "Releases").  Collectively these four documents comprise the "August 2009 Letter."

December 1, 2009, regardless of the fact that you will not receive any payment until 2017."
*Id.* at 2. Shrager stated that the reason for the August 2009 Letter was to bring "a situation
that has evolved in the last year regarding our Key Executive Retirement Plan, of which
you are a participant" to the plaintiffs' attention. *Id.* Optimus concedes that it represented
that all of the cash flow generated by its operations went directly to its senior creditors and
that it did not have the money or the ability to borrow money from its existing banking
sources.

All of the Plan participants chose the second option and agreed to accept 50% of
their vested Plan benefits. Each participant acknowledged that he or she understood and
agreed with all the terms and conditions of the Agreement and had an opportunity to
consult with legal counsel.

At the time the releases were executed, Optimus owned unencumbered artwork as
a company asset. The artwork was carried on the defendant's books, as reported in the
company's 2008 Consolidated Financial Statement, as an asset valued at $2,213,095.00.
Optimus Corporation was appraised as of October 31, 2009, in connection with Phil
Schrager's estate, by Lutz and Company, and assigned a value of $26,779,973.00.
Schrager's ownership interest was valued at $25,058,020.74.

The court held an evidentiary hearing on September 30, 2011, and October 4, 2011,
on plaintiffs' motion to attach defendant's art assets. The evidence adduced at the hearing
showed that most of the art collection had been purchased in the mid to late 1980s. The
collection includes approximately 100 pieces of art. The artwork was listed as a company
asset from the onset and it was reflected on the books at its book value, which was the
purchase price. The artwork was insured for $12 to $15 million. One piece of art was sold

shortly before Phil Schrager's death for $362,500.00.  Optimus is presently winding down operations and liquidating its loan portfolio which has a remaining life of 10 years.

In granting the plaintiffs' order of attachment, the court found that the plaintiffs had signed the releases under duress.  Filing No. 122, Order of Attachment at 5.  Further, the court found sufficient evidence that the defendant concealed the value of the artwork and misled the plaintiffs with respect to the value of the assets owned by the defendant.  *Id.*

## LAW

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A party may move for summary judgment, on a claim or defense or part of a claim or defense.  Fed. R. Civ. P. 56(a).  A court may enter an order stating that "any material fact—including an item of damages or other relief" is "not genuinely in dispute and treating the fact as established in the case."  Fed. R. Civ. P. 56(g).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of

material fact." *Id.* at 323.  If the moving party meets the initial burden, the burden then shifts to the opposing party to produce evidence of the existence of a genuine issue for trial.  *Id.* at 324.  A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (noting the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law).  If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Id.* at 251.

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences.  *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003).  "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.*  "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."  *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004).

A fiduciary and a beneficiary can settle a disputed claim that the fiduciary breached its fiduciary responsibilities under ERISA if the claim is knowingly and voluntarily released. *Leavitt v. Northwestern Bell Tel. Co.*, 921 F.2d 160, 162 (8th Cir. 1990).  To determine whether a release is knowing and voluntary, general principles of contract construction are applied; however, because ERISA is guided by principles of trust law, the court must examine the totality of the circumstances in which the release was signed to ensure the fiduciary did not obtain the release in violation of its duties to the beneficiary.  *Id.*  In

applying those principles, courts consider: (1) the beneficiary's education and business experience; (2) the beneficiary's input in negotiating the terms of the settlement; (3) the clarity of the release language; (4) the amount of time the beneficiary had for deliberation before signing the release; (5) whether the beneficiary read the release and considered its terms before signing it; (6) whether the beneficiary knew of his or her rights under the plan and the relevant facts when he or she signed the release; (7) whether the beneficiary was given an opportunity to consult with an attorney before signing the release; (8) whether the beneficiary received adequate consideration for the release; and (9) whether the beneficiary was induced by improper conduct on the part of the employer. *Id.* at 162.

## DISCUSSION

The court's findings on the attachment motion are dispositive of the issue of enforceability of the releases. The court need not determine whether the statements and opinions expressed in the August 2009 Letter regarding either tax consequences or the company's financial condition were accurate, because the vastly understated value of the company's listed assets is sufficient to show that the plaintiffs' execution of the releases was not knowing and voluntary. The court has considered the factors relevant to determination of the issue of a "knowing and voluntary" release and finds they weigh against such a finding. Although the beneficiaries are educated and sophisticated, they had no input in negotiating the terms of the settlement, had little time to deliberate, did not know relevant and material facts, were not given sufficient time to consult with attorneys or advisors, did not receive adequate consideration, and were induced by the defendant's improper omission of a material fact—the value of company assets.

8

Unrefuted evidence shows that the defendant knew that the art assets were worth far in excess of the amount of the plaintiffs' collective vested benefits. The plaintiffs have shown that knowledge of the value of the assets would have affected their decisions to enter into the settlements and releases. Although the plaintiffs are knowledgeable and sophisticated, they were not in a position to know either the existence or value of the art assets because they had not been in the employ of Optimus for several years before the releases were signed and were not privy to the company's financial statements. The facts surrounding the execution of the releases are not in dispute. The plaintiffs were not provided with material information that undoubtedly would have influenced their decisions to settle for roughly half of the value of their vested benefits. Accordingly, the plaintiffs have shown that the execution of the releases was not knowing and voluntary. The court finds that the releases are unenforceable and the plaintiffs may proceed with ERISA claims against the defendant.

Accordingly,

1. The plaintiffs' motion for partial summary judgment (Filing No. 77) is granted.

2. The releases executed by these plaintiffs with respect to settlement of claims in connection with The Pacesetter Corporation Amended and Restated Key Executive Retirement Plan are unenforceable.

3. Defendant's motion for relief under Fed. R. Civ. P. 56(d) (Filing No. 85) is denied.

DATED this 13th day of December, 2011.

BY THE COURT:


s/Joseph F. Bataillon
UNITED STATES DISTRICT JUDGE

9

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.