# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| STANLEY EDELSTEIN, IVAN GERARD, PAT HOY, BARRY BLUE, ROBERT CAMPNEY, GROVONDA COLEMAN, WAYNE COREY, PETER DANIELSON, WILLIAM GOLDMAN, DANA HAMIK, MICHAEL HICKS, BILL KELLER, RICHARD NEVINS, JOE SCHUETTE, CHRISTL UPCHURCH, LORRAINE VASHON, TIM WHITTINGHILL, PACESETTER CORPORATION AMENDED AND RESTATED KEY EXECUTIVE RETIREMENT PLAN, and ROBERT SCHMIDT, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 8:10CV61<br><br>ORDER |
| Plaintiffs, | ) ) | |
| V. | ) ) | |
| OPTIMUS CORPORATION, | ) ) | |
| Defendant. | | |

Several motions are pending before the Court in this case, including (1) Plaintiffs' Motion to Overrule Defendant's Objections to Plaintiffs' Subpoena, to Compel Non-Party Compliance and for Discovery Sanctions (filing 145); (2) Defendant Optimus Corporation's ("Optimus") Motion for Protective Order (filing 151); and (3) Optimus' Motion to Strike Affidavits (filing 158). Each motion is considered below.

## BACKGROUND

Plaintiffs are all former employees (or their beneficiaries) of Optimus and are seeking to recover retirement benefits under the Pacesetter Corporation Amended and Restated Key Executive Retirement Plan (the "Plan"). In November, 2010, Plaintiffs served their First Sets

of Interrogatories and Requests for Production of Documents on Defendant. (Filing 37.) Several of these discovery requests asked for information related to communications between Optimus and SilverStone Group ("SilverStone"), the company that calculated the amount of benefits owed under the Plan. After Optimus refused to produce certain documents responsive to these requests, Plaintiffs filed a motion to compel, which was subsequently granted. (Filings 45 & 60.) The Court found that communications between Optimus and SilverStone were relevant to Plaintiffs' claims and ordered Optimus to provide complete and responsive answers to Plaintiffs' discovery requests within the boundaries of Fed. R. Civ. P. 26. (Filing 60.) On April 27, 2011, Optimus represented that it had complied with the Court's order. (Filing 66.)

On May 23, 2011, Plaintiffs filed notice regarding a subpoena dues tecum to be issued and served upon SilverStone. (Filing 71.) The notice indicated that the subpoena would be issued 10 days after the notice was mailed (i.e., June 2, 2011) and that the documents were to be produced on June 17, 2011. After providing the notice, however, Plaintiffs agreed to postpone serving the subpoena in exchange for Optimus' agreement to delay deposing the individual Plaintiffs.

Without sending an additional or renewed notice, Plaintiffs issued and served a subpoena duces tecum upon SilverStone on November 7, 2011. (Filing 154-4.) The subpoena called for the production of documents consisting of communications between SilverStone and Optimus. The subpoena requested that the documents be produced on November 21, 2011. On November 17, 2011, Optimus objected to the subpoena on the basis that certain documents in the possession of SilverStone were protected by the attorney-client privilege and work-product doctrine. (Filing 131.) Optimus directed SilverStone not to comply with the subpoena. Following discussions between counsel for Plaintiffs and Optimus, SilverStone produced some records responsive to Plaintiffs' subpoena in December, 2011. Along with this document production, SilverStone provided a privilege log identifying four documents that were withheld on the basis of the attorney-client privilege and/or the work product doctrine. (Filing 154-6.)

Plaintiffs filed a motion to overrule Optimus' objections to the subpoena on January

25, 2012 (filing 145). Plaintiffs' motion includes a request that the Court sanction Optimus for its alleged violations of the Court's previous discovery order (filing 60) and for purportedly obstructing discovery efforts throughout this litigation. On February 10, 2012, in response to Plaintiffs' motion, Optimus filed a motion for a protective order (filing 151), as well as a motion for *in camera* review (filing 152) requesting that the Court review the four documents listed on SilverStone's privilege log to assess the validity of its objections. The Court granted Optimus' motion for *in camera* review on March 6, 2012 (filing 157) and Optimus supplied the Court with copies of the four documents.

## ANALYSIS

Under the federal rules, parties to a lawsuit may obtain discovery regarding any matter, not privileged, that is relevant to a claim or defense of any party. Fed. R. Civ. P. 26(b)(1). However, "[t]he District Court does have discretion to limit the scope of discovery." *Credit Lyonnais v. SGC Int'l, Inc.*, 160 F.3d 428, 431 (8th Cir. 1998). "A person opposing production of documents based on privilege or seeking protection for documents that fall under the attorney-client privilege has the burden of establishing the privilege applies. Similarly, a person opposing production bears the burden of establishing a waiver, by disclosure or otherwise, did not occur." *Woodmen of the World Ins. Soc. v. U.S. Bank Nat. Ass'n*, 2012 WL 354798, *3 (D. Neb. Feb. 2, 2012) (internal citations omitted).

1.  **Plaintiffs' Motion to Overrule Optimus' Objections to Plaintiffs' Subpoena and Optimus' Motion for Protective Order**

As an initial matter, the Court turns its attention to a number of procedural issues associated with the parties' motions. Plaintiffs argue that Optimus waived its objections to the subpoena by failing to assert them within seven days of Plaintiffs' May 23, 2011 notice.[1]

---

[1] Plaintiffs also argue that Optimus waived its privilege objections by failing to raise them in response to Plaintiffs' discovery requests to Optimus. Optimus asserts that no waiver occurred because it was neither aware, nor in possession of the four documents when it answered Plaintiffs' discovery requests. Accepting Optimus' explanation, and having no evidence to the contrary, the Court will not find that a waiver occurred on this basis.

*See* NECivR 45.1. Plaintiffs additionally argue that Optimus' motion for a protective order should be denied as untimely. In response, Optimus asserts that pursuant to the parties' agreement to postpone several items of discovery, including service of the subpoena, Optimus had no obligation to object to the notice at that time and, therefore, no waiver occurred. Furthermore, Optimus maintains that because Plaintiffs did not send another notice prior to actually issuing the subpoena, the subpoena is invalid and unenforceable.

The Court will not deem any privileges waived, nor will it find the issued subpoena invalid. It is apparent that each party has had shortcomings with respect to procedural matters. Given the parties' discovery agreement, it was reasonable for Optimus to assume that a renewed notice would be provided before issuance of the subpoena. The May notice did not include the information required by NECivR 45.1 for the subpoena issued in November, particularly, the date the subpoena would be issued and the time and place for production. However, no harm occurred by Plaintiffs' failure to re-notice the subpoena. Optimus was aware in early November that Plaintiffs planned on serving the subpoena and Optimus was able to object before Plaintiffs received the documents. For its part, Optimus should have filed a motion for protective order at an earlier time. Although the subpoena had been issued, Optimus decided to object to the subpoena, instruct SilverStone not to answer, and then file a motion for a protective order nearly two months later. While the Court understands Optimus' position regarding the enforceability of the subpoena, certainly, this issue could have been resolved through the submission of a motion for a protective order, rather than by asserting objections following the service of the subpoena and directing a nonparty not to comply with the subpoena.

In any event, the bottom line here is that neither party has completely adhered to the federal and local rules of procedure. Therefore, the Court will not undertake an evaluation of the impact of these failures. Rather, the Court will address the substantive issues involved, that is, whether the four documents in question are shielded from discovery by the work product doctrine and/or the attorney-client privilege.

Each of the four documents at issue reflect communications that occurred between representatives of SilverStone and Optimus. Three of the documents consist of notes

authored by Tom Von Riesen ("Von Riesen"), a Principal with SilverStone, regarding discussions with Optimus representatives. The fourth document is an email that was exchanged between Nancy Milledge ("Milledge"), SilverStone's Vice President, and Don Kluthe ("Kluthe"), Optimus' President. Optimus claims that each of the documents are work product and that Von Riesen's notes from August and September, 2009 are also attorney-client privileged.

Plaintiffs first argue that the work product doctrine does not prevent disclosure of the documents because they were not prepared by Optimus' attorneys. This fact alone, however, is of no consequence. The work product doctrine shields from disclosure documents and other tangible things that are prepared in anticipation of litigation by or for another party or its representative, including the party's consultants, insurers and agents. Fed. R. Civ. P. 26. "While the 'work product' may be, and often is, that of an attorney, the concept of 'work product' is not confined to information or materials gathered or assembled by a lawyer." *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 603 (8th Cir. 1977). SilverStone served as a consultant for Optimus with respect to terminating the Plan and calculating benefits owed. The documents in question discuss legal ramifications associated with termination and, in some instances, mention opinions held and communicated by Optimus' counsel. Although the information contained in the documents was not assembled or gathered by Optimus' counsel, this circumstance does not preclude a finding that the documents are work product.

However, in order for the work product doctrine to apply, the documents must have been prepared in anticipation of litigation. Fed. R. Civ. P. 26. "While litigation need not be imminent, the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation." *Janicker v. George Washington, Univ.*, 94 F.R.D. 648, 650 (D.D.C. 1982). The test for determining whether a document was prepared in anticipation of litigation is whether, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987) (citation omitted).

Plaintiffs contend that the work product doctrine is inapplicable because Optimus has not offered evidence suggesting that the documents were prepared in anticipation of litigation. Plaintiffs are correct that Optimus has offered little to demonstrate that it anticipated litigation at the time the documents were created. However, as to Von Riesen's notes from January, August and September, 2009, the evidence is sufficient to conclude that the documents are protected work product. Having reviewed the documents, the Court finds that the work product nature of Von Riesen's notes is self-evident.[2]

Following Optimus' announcement in December, 2008 that the Plan was being terminated, it became very likely, given the factual situation involved, that a Plan participant would bring suit or some other type of legal action would be initiated against Optimus. Von Riesen's document from January, 2009 generally consists of notes from a meeting regarding lump sum calculations. The notes, which were made shortly following the announcement of the Plan termination, clearly reflect conversations conducted in anticipation of litigation.

The notes from September and August, 2009 also disclose legal opinions, mental impressions and conclusions regarding the potential consequences resulting from termination

---

[2] The Court recognizes that

> [t]here are two kinds of work product - ordinary work product and opinion work product. Ordinary work product includes raw factual information. Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories. Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means. In contrast, opinion work product enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances.

*Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000) (internal citations omitted). The Court finds that the character of the work product involved here is of no significance. Even assuming that the documents are ordinary work product, which is entitled to less protection from disclosure, Plaintiffs have not shown that they have a substantial need for the materials or that the substantial equivalent of the documents cannot be obtained by deposition or by other means.

of the Plan. The August notes include information regarding discussions with Optimus' legal counsel. At the time these notes were created, litigation was highly anticipated, as evidenced by the reference to Plaintiff Ivan Gerard. Similarly, the September 2009 notes detail a conversation with Optimus' legal counsel regarding his opinions of the Plan termination. In short, each set of notes contain legal analysis regarding termination of the Plan and were prepared in anticipation of litigation, as made clear by the timing, tone and content of the documents.[3]

However, there is no evidence indicating that litigation was anticipated at the time the March, 2008 email was created. Plaintiffs were not informed that the Plan was being terminated until December, 2008. Suit was not instituted until February 11, 2010. Although the email makes reference to legal counsel and discusses issues surrounding termination, it is not clear from the email that Optimus had actually made the decision to terminate the Plan at the time or that litigation resulting from termination was considered a real possibility. *See Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 604 (8th Cir. 1977) (stating that the work product doctrine does "not come into play merely because there is a remote prospect of future litigation.") Accordingly, Optimus and SilverStone will be ordered to produce the March 14, 2008 email.

### 2. Plaintiffs' Request for Sanctions and Optimus' Motion to Strike Affidavits

Plaintiffs' motion to overrule Optimus' objections to the subpoena includes a request that the Court sanction Optimus for its alleged violation of the Court's discovery order (filing 60) and, additionally, for engaging in behavior designed to prolong this litigation. In connection with their motion, Plaintiffs offered the affidavits of Joe Schuette ("Schuette") and Bill Keller ("Keller") to support their contention that Optimus has engaged in delay tactics. (Filing 156.) Each affidavit describes statements that Harley Schrager ("Schrager"), part owner of Optimus, made during telephone calls. The affidavits state that during these

---

[3] Having concluded that the August and September, 2009 documents are protected work product, the Court will not analyze whether these documents are also shielded from discovery by the attorney-client privilege.

telephone conversations, Schrager informed Schuette and Keller that he could tie this case up in the courts for years.

On March 16, 2012, Optimus moved to strike these affidavits, arguing that they are irrelevant to the issues involved in Plaintiffs' motion and that the affidavits are inadmissible because they reflect settlement discussions. ([Filing 158](#).) According to Optimus, during the telephone calls, Schrager was inquiring as to whether Schuette and Keller had received certain settlement proposals and, at that time, also informed Schuette and Keller that if Optimus was not successful in this litigation, it planned on appealing.

The Court will not reach the question of the admissibility or relevance of the affidavits because the Court has concluded that the imposition of sanctions is not warranted at this time. There is insufficient evidence for the Court to find that Optimus violated the Court's discovery order. Optimus contends that it was not aware of the documents until after the subpoena was issued and there is no evidence that Optimus did, in fact, have the documents in its possession. Also, even considering the affidavits, there is no evidence to support Plaintiffs' allegation that Optimus has engaged in purposeful, repeated efforts to delay this litigation which warrant sanctions. It does not appear that Optimus has requested any extensions or delays that have impacted the progression deadlines set by the Court.

Accordingly,

**IT IS ORDERED:**

1. Plaintiffs' Motion to Overrule Defendant's Objections to Plaintiffs' Subpoena, to Compel Non-Party Compliance and for Discovery Sanctions ([filing 145](#)) is granted, in part. Optimus and SilverStone are directed to provide Plaintiffs with a copy of the March 14, 2008 email exchanged between Nancy Milledge and Don Kluthe by or before April 27, 2012. In all other respects, Plaintiffs' motion is denied.

2. Defendant Optimus Corporation's ("Optimus") Motion for Protective Order

(filing 151) is granted, in part.  Optimus shall provide Plaintiffs the March 14, 2008 email as directed above.

3.      Optimus' Motion to Strike Affidavits (filing 158) is denied as moot.

**DATED April 23, 2012.**

               **BY THE COURT:**

               S/ F.A. Gossett
               **United States Magistrate Judge**