IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STANLEY EDELSTEIN, IVAN GERARD, PAT HOY, BARRY BLUE, ROBERT CAMPNEY, GROVONDA COLEMAN, WAYNE COREY, PETER DANIELSON, WILLIAM GOLDMAN, DANA HAMIK, MICHAEL HICKS, BILL KELLER, RICHARD NEVINS, JOE SCHUETTE, CHRISTL UPCHURCH, LORRAINE VASHON, TIM WHITTINGHILL, PACESETTER CORPORATION AMENDED AND RESTATED KEY EXECUTIVE RETIREMENT PLAN, ROBERT SCHMIDT,<br><br>      Plaintiffs,<br><br> vs.<br><br>OPTIMUS CORPORATION,<br><br>      Defendant. | 8:10CV61<br><br><br><br>MEMORANDUM AND ORDER |

This matter is before the court on the plaintiff's objection, Filing No. 165, to the magistrate judge's order on plaintiff's motion to compel, Filing No. 162.¹  In that order, after in camera review, the magistrate judge found certain documents were protected from discovery by the work product doctrine.  This is an action to recover retirement benefits the plaintiffs allege they are entitled to under the terms of The Pacesetter Corporation Amended and Restated Key Executive Retirement Plan (the "Plan" or "KERP Plan"), pursuant to under ERISA, 29 U.S.C. § 1001 *et seq*.

---

  ¹ The defendant filed a motion for oral argument on the matter, Filing No. 166.  That motion was granted and the court heard oral argument on June 1, 2012.

I. BACKGROUND

The court has previously determined that releases executed by the plaintiffs in connection with the termination of the Plan are unenforceable because the plaintiffs were not provided with material information. Filing No. 138, Memorandum and Order at 8-9; Filing No. 122, Order of Attachment at 5-6. The remaining issue for resolution is calculation of the plaintiffs' benefits under the Plan.

The discovery dispute at issue involves a subpoena for documents in the possession of SilverStone Group. Filing No. 154, Index of Evid. Ex. 3, Subpoena (Doc. # 154-4, Page ID 1869-72). Defendant asserted attorney-client and work product privilege with respect to four documents. *Id.*, Ex. 5, Privilege Log (Doc. # 154-6, Page ID 1876). The plaintiffs then moved to compel production of the documents. Filing No. 145. The magistrate judge conducted an in camera review and held that the notes were protected by the work product privilege. Filing No. 162, Order at 6-7. The magistrate judge found the notes contained mental impressions and legal analysis, and had been prepared in anticipation of litigation. *Id.* at 7. The magistrate judge did not address attorney-client privilege.

Three documents are presently at issue—all are sets of notes authored by Tom Von Riesen, a principal of SilverStone, regarding discussions with Optimus representatives in January, August and September of 2009. On appeal of the magistrate judge's order, plaintiffs argue that the work product privilege does not protect the documents at issue from discovery because the plaintiffs are participants in the Plan and should be allowed to see all information relating to the termination of the Plan and the calculation of the benefits owed to the plaintiffs. The plaintiffs also seek

reconsideration of their motion for sanctions. Defendant argues that the order of the magistrate judge should be affirmed.

The evidence shows Don Kluthe, President and Chief Administrative Officer (CEO) of defendant Optimus Corporation, formerly known as the Pacesetter Corporation, is responsible for administration of the Plan. Filing No. 154, Ex. B, Affidavit of Don Kluthe at 1. SilverStone Group is the Plan's actuary, and has provided tax, accounting and actuarial services for the purposes of administering the Plan. *Id.* Don Kluthe stated in his affidavit that he consulted with outside counsel Randy Limbeck and Jim Miller, Optimus Corporation's general counsel, on issues relating to the Plan. *Id.* This action was filed on February 11, 2010. The parties agree that the Plan is a nonqualified plan under ERISA.

The court has conducted an in camera review of the documents at issue. That review shows that the notes consist of handwritten notes and typed memoranda "to the Optimus file" from Von Reisen regarding telephone conversations with Ivan Gerard, a Plan beneficiary; Don Kluthe, Optimus's President and CEO; and Randy Limbeck, Optimus's outside attorney, as well as notes regarding a meeting with Don Kluthe regarding lump-sum calculations. Von Riesen's notes make reference to statements made by Jim Miller, Optimus's general counsel, to Don Kluthe, and to statements made by Randy Limbeck to Jim Miller and then relayed by Kluthe to Von Reisen. The subject of the conversations is the termination of the Plan, calculation of benefits to the beneficiaries, and a letter proposal to the beneficiaries from Phil Schrager, former Chairman of the Board and Director of Pacesetter Corporation.

3

II.  DISCUSSION

A.  Law.

On review of a decision of the magistrate judge on a pretrial matter, the district court may set aside any part of the magistrate judge's order that it finds is clearly erroneous or contrary to law.  28 U.S.C. § 636 (b)(1)(A); Fed. R. Civ. P. 72(a); *In re Lane*, 801 F.2d 1040, 1042 (8th Cir. 1986).  *See also Bialas v. Greyhound Lines, Inc.*, 59 F.3d 759, 764 (8th Cir. 1995) (noting "a magistrate is afforded broad discretion in the resolution of nondispositive discovery disputes").

In the absence of a relevant federal rule, statute, or constitutional provision, federal common law governs questions of privilege in federal-question jurisdiction proceedings.  Fed. R. Evid. 501; *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985).  The party who claims the benefit of the attorney-client or work product privilege has the burden of establishing the right to invoke its protection.  *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1978) (en banc).

"'The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law.'"  *United States v. Yielding*, 657 F.3d 688, 707 (8th Cir. 2011) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).  This privilege protects confidential communications between a client and his or her attorney made for the purpose of facilitating the rendition of legal services to the client.  *Yielding*, 657 F.3d at 707.  When a matter is committed to a professional legal advisor, it is "prima facie committed for the sake of legal advice and [is], therefore, within the privilege absent a clear showing to the contrary."  *Id.* at 610.  The attorney-client privilege is applicable to the communications of an employee of the client if:  (1) the

4

communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents. *Diversified Indus., Inc.,* 572 F.2d at 609 (noting that the mere receipt of routine reports by the corporation's counsel will not make the communication privileged, either because the communication will have been made available to those who do not need to know or because the communication was not made for the purpose of securing legal advice). An independent consultant can be a representative of the client for purposes of applying the attorney-client privilege if the consultant possesses a significant relationship to the client and the client's involvement in the transaction that is the subject of legal services. *In re Bieter Co.*, 16 F. 3d 929, 938 (8th Cir. 1994) (involving a nonemployee relationship in the nature of a partnership or joint venture). The attorney-client privilege is generally lost when communications are disclosed to a third party. *See, e.g., United States v. Hatcher,* 323 F.3d 666, 674 (8th Cir. 2003).

      The privileged nature of attorney-client communications, "however, is not absolute, for '[u]nder the crime-fraud exception, attorney-client privilege does not extend to communications made for the purpose of getting advice for the commission of a fraud or a crime.'" *In re Grand Jury Proceedings, G.S., F.S.,* 609 F.3d 909, 912 (8th Cir. 2010) (quoting *United States v. Zolin,* 491 U.S. 554, 563 (1989)) (noting that, similarly, a client who has used his attorney's assistance to perpetrate a crime or fraud cannot

5

assert the work product privilege as to any documents generated in furtherance of his misconduct). A district court's finding of probable cause that a client sought an attorney's advice in furtherance of fraud satisfies the evidentiary showing necessary to compel production of privileged documents under the crime-fraud exception. *Id.* The party urging discovery must present facts warranting a reasonable belief that the deponent obtained legal advice to further a crime or fraud. *Kilpatrick v. King*, 499 F.3d 759, 766 (8th Cir. 2007) (holding that threshold showing warrants an in camera review).

Courts have also recognized an exception to the attorney–client privilege in the context of fiduciary relationships. *See Solis v. Food Employers Labor Relations Ass'n*, 644 F.3d 221, 226-27 (4th Cir. 2011). "Rooted in the common law of trusts, the fiduciary exception is based on the rationale that the benefit of any legal advice obtained by a trustee regarding matters of trust administration runs to the beneficiaries." *Id.* at 226. Several circuits have recognized the exception to assertions of attorney-client privilege by ERISA fiduciaries. *See, e.g., id.* at 228 (finding that the fiduciary exception to attorney-client privilege extends to communications between an ERISA trustee and a plan attorney regarding plan administration); *Bland v. Fiatallis N. Am. Inc.*, 401 F.3d 779, 787–88 (7th Cir. 2005) (the ERISA fiduciary's duty to act in the exclusive interest of beneficiaries supersedes the fiduciary's right to assert attorney-client privilege); *United States v. Mett*, 178 F.3d 1058, 1062 (9th Cir. 1999) (reasoning that the ERISA fiduciary, as a representative of the beneficiaries, is not the real client in obtaining advice regarding plan administration and "thus never enjoyed the privilege in the first place"); *United States v. Doe*, 162 F.3d 554, 557 (9th Cir. 1998); *Becher v. Long Island Lighting Co.*, 129 F.3d 268, 272 (2d Cir. 1997); *Wildbur v. ARCO Chem. Co.*, 974

6

F.2d 631, 645 (5th Cir. 1992). The fiduciary exception has also been held to apply to the work product doctrine in the context of ERISA litigation. *Solis*, 644 F.3d at 232 (reasoning that a trustee attorney should not withhold work product from the actual client, i.e., the trust beneficiaries).

In the Eighth Circuit, a top-hat[2] administrator has no fiduciary responsibilities under ERISA. *Craig v. Pillsbury Non-Qualified Pension Plan*, 458 F.3d 748, 752 (8th Cir. 2006) (noting that top hat plans should be treated as unilateral contracts and reviewed in accordance with ordinary contract principles because the policy considerations triggering abuse-of-discretion review (i.e., analogy to trust law and to the fiduciary responsibilities possessed by administrators with discretionary authority) are not present in the case of a top hat plan). Nonetheless, ordinary contract principles require a duty of good faith and fair dealing. *Id.*

"The work product privilege is 'distinct from and broader than the attorney-client privilege.'" *In re Grand Jury Proceedings*, 492 F.3d 976, 980 (8th Cir. 2007) (quoting *In re Murphy*, 560 F.2d 326, 337 (8th Cir. 1977). Work product privilege confers a qualified privilege on documents prepared by an attorney in anticipation of litigation. *Hickman v. Taylor*, 329 U.S. 495, 509-14 (1947); *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987) (*en banc*) (the work product doctrine protects only those documents from discovery that were prepared in anticipation of litigation). The test is whether, "'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the

---

[2] "A top hat plan is so called because it provides 'deferred compensation for a select group of management or highly compensated employees,' 29 U.S.C. § 1051(2), without being subject to the Internal Revenue Code's maximum annual benefit and compensation limits." *Craig v. Pillsbury Non–Qualified Pension Plan*, 458 F.3d 748, 749 (8th Cir. 2006).

7

prospect of litigation,'" but, even though litigation may "'already [be] in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.'"  *Id.* (quoting 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024, at 198-99 (1970)).  Because the work product privilege protects not just the attorney-client relationship but the interests of attorneys to their own work product, both the attorney and the client hold the privilege.  *In re Green Grand Jury Proceedings,* 492 F.3d at 980.

  B. Analysis

  The court first finds that sanctions should not be awarded at this time.  The magistrate judge found there was insufficient evidence for the court to find that Optimus violated the court's discovery order.  Filing No. 162, Order at 8.  The defendant's conduct does not appear so egregious as to warrant sanctions and the plaintiffs have not shown that the proceedings have been unreasonably delayed.

  The court next finds the documents are not protected by the attorney-client privilege.  The defendant has not sustained its burden of showing that it is entitled to the protection of the privilege.  The communications at issue were not made by or to attorneys for the purpose of seeking legal advice.  To the extent that the communications contain any attorney's legal impressions or opinions, the privilege with respect to those statements was waived.  The communications were divulged by the client, Don Kluthe, as President/CEO of Optimus, to a third party, namely, Von Reisen at SilverStone Group.  The defendant has not shown that SilverStone Group has the sort of relationship with Optimus that would be the equivalent of an employer-employee relationship so as to entitle SilverStone to the protection of the attorney-client privilege.

Further, even if the communications could be considered protected by attorney-client privilege, either the crime-fraud or fiduciary exception to the privilege would apply. This court has already found that the defendant made material misrepresentations or omissions of fact in connection with the settlement of the defendant's pension obligations. That finding would be sufficient to invoke the fraud exception. Also, although the administrator of a nonqualified plan may not be a fiduciary, the role played by Optimus vis-à-vis the beneficiaries in this case is sufficiently analogous to a fiduciary relationship that application of ordinary contract principles, including the duty of good faith and fair dealing, would compel the finding that the ERISA Plan attorneys may not shield the material from their ultimate clients, the plan beneficiaries.

The court also finds the finding of the magistrate judge that the documents are protected from discovery by the work product doctrine is clearly erroneous. Again, the court finds the defendant has not sustained its burden to show the documents are protected under the doctrine. There has been no showing that the communications were made in anticipation of litigation. It is not sufficient to show that litigation may result from a transaction. That much is true with respect to many business negotiations or decisions. Further, because SilverStone functioned as the Plan's actuary and tax consultant, the comments included in the notes are precisely the type of documents prepared or records maintained in the ordinary course of business. The defendant has not shown that SilverStone was retained as a consultant to aid the litigation; in fact, the evidence shows the opposite is true. SilverStone is an essential fact witness in the litigation, not an expert retained by Optimus. Accordingly,

IT IS ORDERED:

1. The plaintiffs' objection (Filing No. 165) to the order of the magistrate judge (Filing No. 162) is sustained in part.

2. The magistrate judge's finding that the documents at issue are protected from disclosure by the work product privilege is set aside.

3. Optimus and Silverstone are directed to provide plaintiffs with a copy of the January 16, 2009; August 25, 2009; and September 2009 notes within 7 days of the date of this order.

Date:  June 14, 2012

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge