IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STANLEY EDELSTEIN, IVAN GERARD, PAT HOY, BARRY BLUE, ROBERT CAMPNEY, GROVONDA COLEMAN, WAYNE COREY, PETER DANIELSON, WILLIAM GOLDMAN, DANA HAMIK, MICHAEL HICKS, BILL KELLER, RICHARD NEVINS, JOE SCHUETTE, CHRISTL UPCHURCH, LORRAINE VASHON, TIM WHITTINGHILL, PACESETTER CORPORATION AMENDED AND RESTATED KEY EXECUTIVE RETIREMENT PLAN, and ROBERT SCHMIDT, | **8:10CV61** |
| Plaintiffs, | |
| vs. | **MEMORANDUM AND ORDER** |
| OPTIMUS CORPORATION, | |
| Defendant. | |

This matter is before the court following a nonjury trial that commenced September 17, 2012, and ended on September 24, 2012. Filing Nos. 210, 211, 212 and 213. The court thereafter permitted the parties to file post-trial briefs. Filing Nos. 216 and 217. Pursuant to Fed. R. Civ. P. 52, the court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Plaintiffs filed this action alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), seeking to recover benefits they believe the defendant Optimus Corporation ("Optimus") owes them pursuant to a key executive retirement plan identified as the Pacesetter Corporation Amended and Restated Executive

Retirement Plan ("KERP").[1]  Tr. Ex. 1.  This court previously found that liability existed under the plan, as Optimus fraudulently failed to reveal substantial assets during settlement negotiations with the plaintiffs.  Filing No. 138.  As a result, the court has now conducted a nonjury trial exclusively on the issue of the damages owed to the plaintiffs.

The KERP plan is a nonqualified plan, which means the plan is unfunded and does not have the same tax benefits as a qualified plan.  The KERP plan states in relevant part that lump sum benefits "shall be the present value, actuarial equivalent of [each] Participant's benefit computed pursuant to Article IV of the Plan, using the actuarial assumptions as reasonable [sic] selected by the Plan actuary and approved by the Chairman of the Board of Directors of the Company."  Tr. Ex. 1, p. 16, § 9.3.  Art. 9, Sec. 9.3 is the controlling provision relevant to this lawsuit and requires a lump sum payout.  At all relevant times Glen Gahan of SilverStone Group ("SilverStone"), an independent actuarial firm hired by Optimus, served as the plan actuary and worked on the plan since 1995.

The plan participants received a letter dated December 2008, which notified them that their KERP plan had been terminated and a lump sum would be paid in December 2009.  Tr. Ex. 5, Dec. 16, 2008 letters.  These amounts were later corrected due to a computer error and explained in a letter sent in February 2009.[2]  Tr. Ex. 6, Feb. 2009 letters.  Donald Kluthe served as the President of Pacesetter and Optimus.  He testified

_____

[1] Pacesetter was the predecessor to Optimus.

[2] The parties argue about a miscalculation and resulting letter from Don Kluthe, President of Optimus, advising of the error in the initial calculation by Silverstone Group.  The plaintiffs argue that such language in the letter is ambiguous with regard to the interest rate used.  The court finds this argument without merit.  It is clear from the testimony and evidence that Silverstone intended to consistently use the relevant 2009 calculations according to their methodology.  The court finds his letter is not ambiguous.

that the February 12, 2009, letters, Ex. 6, corrected the amount of the lump sum benefits payable in December 2009. These December 2008 letters contained the calculations for each participant used by Silverstone.  *Id.* at 2.

Mr. Gahan and employees at Silverstone chose certain actuarial assumptions. These assumptions were approved by the Chairman of Optimus.  Mr. Gahan selected the Pension Protection Act of 2006 ("PPA") as his methodology for calculating the benefits under the KERP plan.  The IRS publishes monthly interest rates to determine present value for qualified pension plans.  These rates are generally referred to as the PPA rates.  Silverstone used the PPA rates in determining the benefit calculations.[3] See Tr. Exs. 8 and 13.  Mr. Gahan selected the assumptions for the 2009 numbers.  He calculated the interest rate on the September 2008 PPA, based on a review of four segments, a one-year stability rate, and the 2009 mortality rate.  See Tr. Exs. 110, 113, and 114.[4]  Silverstone employees calculated the lump sum benefits in January 2009. They used the 2009 PPA mortality table and the interest rates published by the IRS of 4.91% for benefits paid the first 5 years, 5.5% for benefits paid years 6 through 20, and 5.31% for benefits paid for more than 20 years.  Tr. Ex. 110.

In accordance with the plan provisions, the payout of all monies to the plaintiffs was to occur in December 2009.  Pl. Trial Ex. 1, Pacesetter Key Executive Retirement Plan, p. 16, § 9.3.  Instead, Optimus paid one-half of the amount due in December 2009.  Optimus has paid no additional sums to the plaintiffs since that date.

---

[3] In 2004 there was a distribution under this plan. Silverstone used the same methodology in its 2009 calculations as it did in a previous distribution for Optimist.

[4] The December 2008 rates were not available when he made the calculations.

Plaintiffs' pension actuary, Michael Preston, testified as to amounts now due and payable under the plan. He invented a software program methodology that is used by other plans. Mr. Preston used this process to calculate the benefits owed to each participant. *See* Tr. Exs. 2 and 2A.[5] *See also* Tr. Ex. 11, IRS notice with interest rates for Tr. Ex. 2, using May/June 2012 rates. He testified that the current PPA rate, not the 2009 rate, should be used. On his most recent calculations, Mr. Preston used the PPA rate for May for his June 2012 report. He likewise used the mortality table for 2012. Tr. Ex. 12, p. 13.

Tom Von Riesen, a Silverstone employee, also worked on the plan. Mr. Von Riesen testified that he specializes in nonqualified plans. He was first contacted regarding plan termination in March or April of 2008. Optimus decided not to terminate at that time. Mr. Von Riesen was later contacted in the fall with the understanding that Optimus was going to terminate the plan. He testified that a § 409a plan must be finished within one year of the termination. Optimus terminated the plan in December of 2008, which meant the payout had to occur in December of 2009. He further testified that when doing the calculations, they used the rates one would use for qualified plans, commonly known as the PPA approach. He testified that Optimus did not influence the assumptions and that Silverstone acted independently.

Greg Reuschoff testified that he is currently a pension actuary with Milliman. Mr. Reuschoff served as an actuary for the Pacesetter/Optimus plan back when it was formed. The last time he serviced this plan was 1994. For trial, he reviewed the

---

[5] Exhibit 2 is the same as Exhibit 2A, but Exhibit 2A contains the September 2012 interest rate.

4

methodology for termination of this plan as suggested by Silverstone.  *See* Tr. Exs. 115 and 116.  He testified that he reviewed Mr. Preston's opinion and found it unreasonable.

Don Kluthe participated in the administration of the plan.  He signed the amendment terminating the plan on December 1, 2008.  The plaintiffs contend there is no evidence that the Chairman of Optimus, Phil Schrager, actually approved the plan actuary's suggestions regarding interest rates.  The Optimus chair is now deceased. Mr. Kluthe testified that he personally visited with Phil Schrager about the assumptions presented by Silverstone for the plan termination.  They met after the calculations and before the December notice.  Mr. Schrager verbally approved the plan and the assumptions, prior to his death on June 7, 2010.  In addition, Mr. Kluthe testified that he also met with Mr. Schrager when it was discovered that the lump sums were incorrect due to a computer programming error.  The court finds there was ample evidence in the record that the chair, Mr. Schrager, both implicitly and explicitly approved these actuarial numbers proposed by Silverstone.

The plaintiffs contend that the KERP plan itself is entitled to claim damages.  The court disagrees and finds the KERP plan itself is not entitled to damages.  There were 23 plan participants.  They all settled with Optimus.  This court later determined that fraud occurred and found all the settlement agreements unenforceable.  Thereafter, five of the participants signed a second settlement agreement.  The court finds that these settlements are valid and enforceable.  Those five participants will not be considered in

the damages portion of this award.  Consequently, the court will make an award only as it relates to those remaining 18 plaintiffs who have not settled with Optimus.[6]

## CONCLUSIONS OF LAW

The KERP plan in this case is a "top hat" plan under ERISA.  A "top hat" plan is one that is unfunded and is used by employers "primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. §§ 1051(2), 1081(a)(3), and 1101(a)(1).  These plans are exempt from the participation, vesting, funding and fiduciary provisions of ERISA. These unfunded plans are treated as unilateral contracts and are reviewed in accordance with ordinary contract principles. *Craig v. Pillsbury Non-Qualified Pension Plan,* 458 F.3d 748, 752 (8th Cir. 2006) (citations omitted).  The court must review the plan de novo, but the discretion set forth in the plan is part of the contract, so long as the discretion is exercised in good faith and is reasonable.  *Id.* (*citing Goldstein v. Johnson & Johnson*, 251 F.3d 433, 443-444 (3rd Cir. 2001).

The court finds, and the parties agree, that the plaintiffs are entitled to the second half of the payment not paid by Optimus in December 2009.  The named plaintiffs received one-half of $4,675,710.00 in December 2009.  The other one-half that was not paid in December 2009 is $2,337,855.  Tr. Ex. 116, n. 3.  The court will address whether the plaintiffs are entitled to prejudgment interest, and if the answer is in the affirmative, what interest rate it will apply.

---

[6] The court notes for the record that this case was not filed as a class action pursuant to Fed. R. Civ. P. 23.

### A.  Whether to award prejudgment interest

Pursuant to 29 U.S.C. § 1132(a)(1)(B), the court must look in the first instance to the terms of the plan.  The court finds that the plan clearly spells out the process used in the event a payout is necessary.  However, Optimus did not follow that plan for the remaining half of the money due the plaintiffs in this case.  That contract was clearly breached.  There is no provision in the plan that deals with this exact issue.

ERISA does not expressly provide for prejudgment interest.  However, prejudgment interest awards are permitted under 29 U.S.C. § 1132(a)(3)(B) (providing for "other appropriate equitable relief").  *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1219 (8th Cir. 1981) (award of prejudgment interest necessary in order that plan participants obtain appropriate equitable relief).  "Under ERISA, awards of . . . prejudgment interest are discretionary. . . .  We review the district court's decision to award prejudgment interest . . . under an abuse of discretion standard, and reverse only if the record clearly shows an abuse of discretion."  *Lutheran Medical Center v. Contractors,* 25 F.3d 616, 623 (8th Cir. 1994) (abrogated on other grounds) (*citing Short v. Central States*, 729 F.2d 567, 576 (8th Cir. 1984).  The decision whether to award prejudgment interest is within the district court's discretion, but the court abuses its discretion when denying "a prevailing ERISA benefit claimant's request for prejudgment interest, absent exceptional or unusual circumstances."  *Leonard v. Southwestern Bell Corp. Disability Income Plan*, 408 F.3d 528, 534 (8th Cir. 2005).

In general, prejudgment interest awards are warranted when the damage award does not otherwise make the plaintiff whole.  *Smith v. World Ins. Co.*, 38 F.3d 1456, 1466 (8th Cir.1994).  In particular, prejudgment interest serves to compensate the

7

prevailing party for the inability to use the money between the time of the compensable injury and the time the award is paid. *Christianson v. Poly-America, Inc. Medical Benefit Plan*, 412 F.3d 935, 941 (8th Cir. 2005) (prejudgment permitted in ERISA cases where it is necessary to give plaintiff equitable relief under § 1132(a)(3)(B)).  "A common thread throughout prejudgment interest cases is unjust enrichment—the wrongdoer should not be allowed to use the withheld benefits or retain interest earned on the funds during the time of the dispute." *Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 946 (8th Cir. 1999).   ERISA provides this court with equitable powers pursuant to 29 U.S.C. § 1132(a)(3) where there is not an appropriately adequate remedy elsewhere. *Conley v. Pitney Bowes,* 176 F.3d 1044, 1047 (8th Cir. 1999).  Interest shall be computed daily to the date of payment except as provided in § 2516(b) of this title and § 1304(b) of Title 31, and shall be compounded annually.  28 U.S.C. § 1961(b); *Loberg v. Cigna Group Ins.*, 8:09CV280, 2012 WL 4089889 (D. Neb. Sept. 17, 2012).

The court finds plaintiffs are the prevailing parties in this case.  They are entitled to prejudgment interest, as they lost the use of their money and because Optimus had the use of plaintiffs' money since 2009.  The final determination for this court, then, is the amount of interest which should be awarded to the plaintiffs.

There are three possible calculations this court could consider as to the appropriate rate of prejudgment interest in this case.  They include:  rates under § 1961; or, the 2009 PPA rates that would have been used had the second half of the distribution occurred; or 2012 PPA rates in effect at the time of the final distribution. The court will now address these variables.

B.  Section 1961

The Eighth Circuit has held that in an ERISA case where a participant was attempting to recover accidental death benefits, a court must "calculate prejudgment interest using the rate established by § 1961." *Sheehan v. Guardian Life Ins. Co.*, 372 F.3d 962, 969 (8th Cir. 2004); *see also Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1331 (8th Cir. 1995) ("28 U.S.C. § 1961 provides the proper measure for determining rates of both prejudgment and postjudgment interest under ERISA.").  Section 1961(a) states, with regard to postjudgment interest:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . .  Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.

In recognition of this statutory change, the Eighth Circuit held that 28 U.S.C. § 1961, as amended, "provides the proper measure for determining rates of both prejudgment and postjudgment interest." *Mansker.*, 54 F.3d  at 1331.[7]

The court has calculated the rate of interest payable under § 1961.  The total prejudgment interest due to the 18 plaintiffs as of November 15, 2012, is $2,356,564.60, which includes an effective interest rate of 0.27% based upon postjudgment interest rate in effect for the week preceding judgment or week ended November 27, 2009, with an assumption that payment is made on November 15, 2012.  The breakdown per plaintiff is set forth below:

---

[7] *See Dependahl*, 653 F.2d 1219 where court discusses pre-statutory change.  Section 1961 formerly used the state law rate when determining prejudgment interest.

| Payee | Balance |
|---|---|
| Blue, Barry | $93,610.20 |
| Campney, Robert | $189,873.47 |
| Coleman-Tweeton, Grovonda | $22,943.66 |
| Corey, Wayne | $93,942.85 |
| Danielson, Peter | $450,835.32 |
| Edelstein, Stanley | $212,937.59 |
| Gerard, Ivan | $172,977.83 |
| Goldman, William | $222,745.46 |
| Hamik, Dana | $61,315.30 |
| Hicks, Michael | $124,628.47 |
| Hoy, Pat | $112,254.23 |
| Keller, William | $183,645.53 |
| Nevins, Richard | $58,601.76 |
| Schmidt, Robert | $59,643.53 |
| Schuette, Joseph | $71,984.01 |
| Upchurch, Wilton | $53,700.35 |
| Vashon, Harold | $40,197.14 |
| Whittinghill, Tim | $130,727.90 |
| Total | $2,356,564.60 |

The court would ordinarily apply the § 1961 rates in this type of a case. However, as discussed hereinafter, the court finds the facts in this case and the history of payouts by Optimus support application of the PPA prejudgment rate in effect at the time of the 2012 distribution date.

*C.  PPA Rates*

Both parties have attempted to apply the PPA rates to the issue of prejudgment interest in this case.  There are no Internal Revenue Code or ERISA regulations that dictate how payment should be made for a nonqualified plan.  The IRS does, however, issue monthly interest rates, commonly referred to as segment rates, for use in determining present value of benefit plans pursuant to qualified pension plans.  As noted previously, these are known as the PPA rates.

The KERP Plan states that the lump sum amount is determined by "using the actuarial assumptions as reasonabl[y] selected by the Plan's actuary and approved by the Chairman of the Board of Directors of the Company." Tr. Ex. 1. Further, the KERP Plan states "the selection and approval of the actuarial assumptions and the determination of the lump sum equivalent value shall be final and conclusive and binding on the Company, the Participants and any Beneficiaries." KERP Plan, Section 9.3.

(1)   2009 PPA rates

Optimus contends the calculation should be based on the percentage set in January 2009, using the PPA rates in effect at that time.[8] Optimus argues, in other words, that this court should go back to the day of the breach when the payment was not made and use the interest rate plaintiffs were entitled to on that date. Silverstone's 2009 calculations, if applied, take the total amount, less the nonparty settlors, divided by two, as set forth below:

| | |
|---|---|
| Total: | $6,472,278.00 |
| Less Nonparty Settlors: | |
|     Anthony | ($493,626.00) |
|     Blaha | ($665,613.00) |
|     Kluck | ($137,753.00) |
|     Kluthe | ($238,995.00) |
|     Miller | ($260,580.00) |
| Subtotal: | $4,675,711.00 |
| Divided by 2 | |
| Total Owed to Plaintiffs: | $2,337,855.50 |

---

[8] The court notes that under the PPA language there is a stability period of one year with a look back on the interest rates as far back as four months. It is clear in this look-back period that Silverstone used the month most favorable to the plaintiffs.

SilverStone Group (Tr. Ex. 110, SilverStone Final Calculations, p. 2).   Defendant's expert, Gregg Rueschhoff, agrees with this calculation.   Tr. Ex. 116, Gregg Rueschhoff's Calculations, n. 3.  Optimist would then apply the 2009 prejudgment PPA rate to the principal balance.

The court will not adopt this method of determining prejudgment interest.  The plaintiffs lost the use of their money from December 2009 to the present time.  Optimus enjoyed the benefit of the use of plaintiffs' money.  The plan does not require that the court use this 2009 interest rate in the event of a breach.  The court finds this calculation will not fully compensate the plaintiffs for the loss of the use of their money. Accordingly, the court will decline to adopt this approach.

(2)   2012 PPA rates

Plaintiffs contend that they have lost the use of that money, that the economy has declined, and that they no longer have the benefit of that bargain.  They make this argument because Optimus committed fraud, because Optimus failed to make the full December 2009 payout, because they have lost the use of their money, and because Optimus had the use of their money. The plaintiffs argue that they are entitled to a calculation computed one of two ways:  (1) based on the entire amount initially owed to plaintiffs, with interest on the total amount at the 2012 rates, less a deduction for the amount already paid,[9] or (2) based on the second half of the amount due to the 18

---

[9] The court concludes that the three band segment rate to compute the entire lump sum payment of the total amount, followed by a deduction of the present value of segment one, amounts to double dipping.  The court did not find this testimony credible.  The court finds this assumption is unreasonable from an actuarial standpoint.  Further, the method would provide the plaintiffs with a windfall that is in the neighborhood of compensatory damages rather than restitution.  Finally, plaintiffs offered no relevant law to support this calculation and argument.  Accordingly, the court will not adopt this proffered method of computing interest.

named plaintiffs using the current 2012 PPR rates.  Plaintiffs contend that the parties are entitled to use the interest rate of 1.13% from December 2009 to the present which is the PPA rate as of September 1, 2012.  See Ex. 2A.  This amount calculates as follows:

| Payee | Balance |
|---|---|
| Blue, Barry | $96,003.85 |
| Campney, Robert | $194,728.61 |
| Coleman-Tweeton, Grovonda | $23,530.34 |
| Corey, Wayne | $96,345.00 |
| Danielson, Peter | $462,363.35 |
| Edelstein, Stanley | $218,382.48 |
| Gerard, Ivan | $177,400.94 |
| Goldman, William | $228,441.14 |
| Hamik, Dana | $62,883.16 |
| Hicks, Michael | $127,815.27 |
| Hoy, Pat | $115,124.61 |
| Keller, William | $188,341.41 |
| Nevins, Richard | $60,100.23 |
| Schmidt, Robert | $61,168.64 |
| Schuette, Joseph | $73,824.67 |
| Upchurch, Wilton | $55,073.48 |
| Vashon, Harold | $41,225.00 |
| Whittinghill, Tim | $134,070.66 |
| | |
| Total | $2,416,822.86 |

The court finds adoption of this methodology makes the most sense.  It compensates the plaintiffs for the loss of the use of their money since 2009.  It is consistent with the method used for two previous distributions by Optimus to plan participants.  Accordingly, the court will adopt the PPA rates in effect at the time this court enters judgment.

_D.  Conclusions_

In conclusion, the court finds that the remedy available under § 1132(a)(1)(B) does not adequately address plaintiffs' claims.  Accordingly, the court finds the plaintiffs are entitled to seek equitable relief under § 1132(a)(3).   The court makes this determination based on the fact that the defendant had possession of plaintiffs' funds since December 2009 and that plaintiffs did not have the benefit of those funds.  It is unclear under the plan what interest rate should be used in the event Optimus failed to timely pay the distribution.  The court narrowed the choices down to the § 1961 treasury rates or the 2012 PPA rates in effect at the time of distribution.  The use of the rate set by the actuaries was specifically for the payment upon a timely distribution.  In keeping with the methodology previously used for distributions by Optimus under this plan, and for the reasons previously set forth herein, the court will adopt the 2012 PPA prejudgment interest rates.

THEREFORE, IT IS ORDERED that:

1.  The court awards judgment to each of the plaintiffs based upon the unpaid benefits due each plaintiff using the PPA 2012 rates closest to the date of December 1, 2012.

2.   Plaintiffs and defendant Optimus shall meet and confer and shall jointly submit to the court an Order of Judgment within ten days of the date of this Memorandum and Order.  The Order of Judgment shall contain the total amount due to each of the 18 named plaintiffs, delineated by principal and prejudgment interest, per plaintiff.   The prejudgment interest rate shall be calculated based on the PPA rate

closest to December 1, 2012.  The judgment shall be based upon the sums Optimus failed to pay to the 18 named plaintiffs in 2009.

3.   The court will likewise award postjudgment interest to each of the named plaintiffs at the rate set by 28 U.S.C. § 1961 which is .27% per day after the entry of judgment (presumably December 1, 2012).

4.   A final judgment shall be entered upon receipt of the joint submission for judgment from the parties in this case.

Dated this 20th day of November, 2012.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge